SYLVESTER J. INGALLS, Respondent, *v.* PRIN INGERSOLL, Appellant, Impleaded with Another.

*Foreclosure of a mortgage — want of consideration and wrongful diversion from the use for which it was executed — scope of cross-examination.*

On the trial of an action for the foreclosure of a mortgage, the only question litigated was one of fact, raised by a defense that the mortgagor had made the mortgage at the request of the mortgagee without any consideration, to be used by the mortgagee as collateral security for a loan at a bank, but that the mortgagee had wrongfully diverted it from that use and sold it to a third party, who sold it to the plaintiff.

The case was a doubtful one, and the testimony of the mortgagee in contradiction of the mortgagor's version of the transaction was evasive, and while he cate-

gorically denied the facts alleged as a defense on the part of the mortgagor he was unable or unwilling to give any account of the transaction as it actually occurred

*Held,* that the case was one from the elucidation of which no available light should have been excluded, and that it was error to exclude, on the ground of not being a proper part of a cross-examination, questions put to the mortgagee on cross-examination which tended to test the honesty of his assignment of the mortgage.

APPEAL by the defendant, Prin Ingersoll, from a judgment of the Supreme Court, foreclosing a mortgage and directing a sale of the mortgaged premises, entered in the office of the clerk of Allegany county on the 2d day of March, 1892, on the report of a referee.

*G. W. Harding,* for the appellant.

*J. C. Leggett,* for the respondent.

DWIGHT, P. J.:

The action was for the foreclosure of a mortgage made by the defendant, Mrs. Ingersoll, to one Russell and assigned to the plaintiff. The defense was want of consideration, the defendant averring that she made the mortgage at the request of the mortgagee, without any consideration, to be used by him at a bank as collateral security for a loan of $200; but that the mortgagee wrongfully diverted it from that use and sold it to one John W. Ingalls who sold it to the plaintiff.

The issue thus joined presented the only question litigated on the trial, and that was purely a question of fact.

On that question the defendant made direct and positive evidence in support of the averments of her answer, by her own testimony and that of her brother, who testified that he was present when the application was made to her for the mortgage. On the part of the plaintiff the only direct evidence was by the testimony of Russell, the mortgagee, and that testimony, we feel bound to say, was of an extremely unsatisfactory character. On his direct-examination, he testified to no fact whatever, except that Mrs. Ingersoll received $400 in money, for the mortgage, which was paid to her, or as she requested. All the rest of his testimony, on direct-examination, consisted of specific denials of matters testified to by the defendant

and her brother. On his cross-examination, counsel for the defend-ant seems to have made the effort to obtain from this witness his version of the transaction, but wholly without success. Nearly all his answers seem to have been evasive. He professed himself unable to tell where the defendant applied to him for the loan, or what she said in making the application; where the mortgage was executed, or by whom it was delivered to him; where or when he paid her any part of the consideration, or where he got any part of the money which he paid. He testified that he did not know who wrote the mortgage, but that he did not; nor who wrote the acknowledgment, nor whether both were written by the same person; he afterwards testified that he wrote the acknowledgment, but he does not know where he wrote it. He testified: "I do not know whether she (Mrs. Ingersoll) sold the mortgage or not; I think I paid the consideration of the mortgage to her, or the person to whom she sold the mort-gage." The witness was a lawyer, and eighty-three years of age, but these facts do not seem to account for the incoherent, unin-telligent and apparently evasive character of his testimony. The referee can hardly have given much weight to his categorical denials of the evidence on the part of the defendant, when he was unable or unwilling to give any account whatever of the transaction as it actually occurred.

The only other evidence on the part of the plaintiff was derived from an admission of her answer that she had made three small pay-ments of interest on the mortgage, and from two letters written by her, when temporarily in Kansas, to John W. Ingalls, who then held the mortgage, and who had written her demanding payment of the interest, and threatening foreclosure if it was not paid. In the first of the letters she expressed great surprise that the mortgage was in his hands, but one of them inclosed a draft for sixteen dollars, and both contain promises of further payments when she returns home. She testifies that she made both payment and promises in the belief that by no other means could she prevent the sale of her property on foreclosure.

It was, probably, the evidence of payment and promises to pay, which induced the report in favor of the plaintiff, and we are not prepared to say that the findings were unwarranted by the evidence

as it stood. But we are of the opinion that the referee erred in his rulings upon one or two questions of evidence which arose upon the trial.

On the cross-examination of the witness Russell, who was a party to the transaction which was the subject of inquiry, and whose examination thus far had been so unproductive of facts, he was asked whether he had ever taken a writing from John W. Ingalls in reference to this mortgage. The question was objected to as not a proper part of cross-examination, and the objection was sustained. We think it should have been overruled. Ingalls was Russell's assignee of the mortgage. Russell's title to the mortgage, and his right to assign it, had been strongly impeached. The court should have availed itself of every means of testing the honesty of this assignment. If Ingalls gave back to his assignor some paper in the nature of a defeasance or providing against an attempt to enforce the mortgage against the mortgagor, or which in any other way bore upon the *bona fides* of the assignment, the defendant was entitled to elict the fact if possible from the witness. In view of the evasive character of his testimony already given, a very wide scope would have been allowed to his further cross-examination. Another question pointing in the same direction was put to the witness and was disallowed by the court on the same ground as the last. It was, " Did you tell Mr. John W. Ingalls at the time you let him have this mortgage, that he must not disturb Mrs. Ingersoll ? " The question was an important one, and if answered in the affirmative would, no doubt, have been followed by questions which would have gone far to demonstrate the truth of the case. We think both of the questions discussed were properly part of the cross-examination of this witness ; that the objection thereto was improperly sustained. The case was, to say the least, a doubtful one on the question of fact, and one from the elucidation of which no available light should have been excluded.

For the erroneous rulings mentioned, the judgment should be reversed and a new trial granted.

LEWIS, MACOMBER and HAIGHT, JJ., concurred.

Judgment appealed from reversed and a new trial granted, with costs to abide the final award of costs.